**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CHRISTINE SCOTT**                                                                                    **PLAINTIFF**

**v.**                                              **4:09CV00893-BRW**

**SALINE COUNTY MEDICAL CENTER**                                           **DEFENDANT**

## ORDER

Pending is Defendant's Motion for Summary Judgment (Doc. No. 21).  Plaintiff has

responded,[1] and Defendant has replied.[2]  As set forth below, the Motion is GRANTED.

## I.   BACKGROUND[3]

Plaintiff worked as a registered nurse in Defendant's surgical department from August

18, 2008, until November 18, 2008.  She alleges that she was denied proper training, subjected to

less favorable working conditions, and terminated on account of her race (African-American),

sex (female), and age (52).[4]

Defendant's nursing manager, Tanya Shelnut, hired Plaintiff based in part on her fifteen

years of experience in surgical nursing.  On her first day, Plaintiff attended an orientation

required for all new employees.  On her second and third days, Plaintiff attended an orientation

---

[1]Doc. No. 32.

[2]Doc. No. 38.

[3]Unless otherwise noted, the information in the background section is taken from the
parties' Statements of Facts (Doc. Nos. 23, 36).

[4]Doc. No. 6.

for nurses.[5]  After these orientations, Plaintiff began working the 7:00 p.m. to 7:00 a.m. shift,

Monday through Wednesday.

New nurses—including experienced ones—are to be assigned a preceptor to mentor them

through an orientation period.  Plaintiff contends that she was not assigned a preceptor until

October 20, 2008, approximately two months after she started working for the Defendant.

Plaintiff also contends that she was assigned a full load of five patients starting with her first

shift, although the hospital's orientation plan calls for a more gradual increase to a full load of

patients.  Plaintiff's orientation period was extended, and on October 20, 2008, she was moved

to the 3:00 p.m. to 11:00 p.m. shift to work more closely with Judy Kindy, the clinical

coordinator or "charge" nurse.  According to Plaintiff, Kindy was hostile and refused to provide

training.

On November 3, 2008, Plaintiff met with Shelnut and Kindy regarding on-going

concerns about her job performance and several alleged patient complaints.  On November 10

and 11, 2008, Defendant allegedly received several more complaints from patients about

Plaintiff's performance.  On November 12, Plaintiff was placed on final step discipline, which

specified that any other patient complaints or issues with patient care would result in immediate

termination.  That night, Plaintiff was assigned a diabetic patient who was to receive insulin,

with food, at 9:00 p.m.  Plaintiff did not give the patient his insulin until around 11:10 p.m.  She

was terminated by Tanya Shelnut on November 18, 2008, the day of her next scheduled shift.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC"), alleging that she was being discriminated against on account of her race,

---

[5]Although she disputes this at one point, Plaintiff appears to concede that she received the
hospital-wide training for nurses; she complains that she did not receive *unit* orientation.

age, and sex.  She received a right-to-sue letter dated August 24, 2009,[6] and filed her complaint

on November 24, 2009.[7]

## II.    STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact, so

that the dispute may be decided on purely legal grounds.[8]  The Supreme Court has established

guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the
> need for a trial -- whether, in other words, there are any genuine factual issues that
> properly can be resolved only by a finder of fact because they may reasonably be
> resolved in favor of either party.[9]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an

extreme remedy that should be granted only when the movant has established a right to the

judgment beyond controversy.[10]  Nevertheless, summary judgment promotes judicial economy

by preventing trial when no genuine issue of fact remains.[11]  I must view the facts in the light

most favorable to the party opposing the motion.[12]  The Eighth Circuit has also set out the burden

of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate,
> *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine
> dispute on a material fact.  It is enough for the movant to bring up the fact that the
> record does not contain such an issue and to identify that part of the record which

---

[6]Doc. No. 6, Exhibit B.

[7]Doc. No. 1.

[8]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56.

[9]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[10]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

[11]*Id.* at 728.

[12]*Id.* at 727–28.

bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.[13]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[14]

Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where a party has failed to present evidence sufficient to create a jury question as to an essential element of her claim.[15]

## III.   DISCUSSION

### A.   Age and Sex Discrimination

Plaintiff has provided no argument or evidence regarding her age or sex discrimination claims.  Therefore, Defendant's Motion for Summary Judgment is GRANTED as to these claims.

### B.   Race Discrimination

To establish a *prima facie* case of race discrimination, Plaintiff must show: (1) she is a member of a protected class, (2) she was meeting her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently.[16]  The burden then shifts to Defendant to articulate a

---

[13]*Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[14]*Anderson*, 477 U.S. at 248.

[15]*Whitley v. Peer Review Systems, Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000) (internal citations omitted).

[16]*Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (2005) (quotations omitted).

legitimate, nondiscriminatory reason for its action.[17]   Here, Defendant has met that "minimal

burden"[18] by explaining that Plaintiff, a probationary employee, was not meeting reasonable

performance expectations and was late in administering medication while on final step

discipline.  So, Plaintiff must show that the proffered nondiscriminatory reason is merely a

pretext for unlawful race discrimination.[19]  The showing of pretext necessary to survive summary

judgment requires more than merely discrediting an employer's asserted reasoning for

terminating an employee.[20]

First, Plaintiff contends that she was denied proper training because she did not receive

orientation for her unit within the hospital.  Similarly, she argues that Defendant did not follow

the Orientation Plan for experienced nurses and that this is evidence of disparate treatment.

Taking Plaintiff's factual allegations as true, their relevance is minimal because Plaintiff was

never disciplined for or harmed by a lack of familiarity with any procedure or policy.

Plaintiff also asserts that she was subjected to less favorable working conditions than

employees outside the protected class, including having her patients switched often and being

assigned the most difficult patients.  Records show that for most of the month of September

2008, Plaintiff was assigned two to four patients per shift, and sometimes she had the same

patient for more than one shift.  Plaintiff's allegations do not rise to the level of a hostile work

environment claim, and they do not provide evidence of discriminatory intent on the part of

Defendant.

---

[17]*Putman v. Unity Health System*, 348 F.3d 732, 735 (8th Cir. 2003).

[18]*Id.*

[19]*Id.*

[20]*Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

Plaintiff raises several points regarding patient complaints.  First, she denies that any patients actually complained about her.  While there may be a genuine issue of fact as to whether patients complained about Plaintiff, the proper inquiry is not whether the complaints were true (or actually made) but whether Defendant believed them to be true.[21]  There is no evidence that the decision-maker, Tanya Shelnut, had any reason to doubt that patients made these complaints.  Second, Plaintiff points to other instances of nurses receiving patient complaints and asserts that the alleged complaints against her "were not specific complaints reported on some type of form."[22]  A memo[23] attached to Plaintiff's final-step discipline form set out several patient complaints made during her shifts on November 11 and 12.  The memo also noted several deficiencies in her work, including failing to draw a lab, drawing a lab late, and incomplete charting.  Finally, Plaintiff takes issue with being given a final step discipline without being issued first and second step disciplinary forms.  In fact, while some nurses were given verbal counseling or first step discipline, several other nurses were placed on final step discipline for patient complaints.  Plaintiff has failed to show that she was treated differently from similarly situated employees.

Plaintiff also claims disparate treatment regarding the medication error for which she was terminated, pointing to medication errors by other nurses.  Instances of disparate treatment can support a finding of pretext, but Plaintiff has the burden of proving that she and the other nurses were similarly situated in all relevant respects.[24]  The Eighth Circuit has two lines of cases on the

---

[21]*Id.* at 762–63.

[22]Doc. No. 33, p. 33.

[23]Doc. No. 34-1, Plaintiff's Exhibit P.

[24]See *Harvey v. Anheuser-Busch, Inc.*, 38 F.3d 968, 972 (8th Cir. 1994).

6

standard used to determine whether employees are similarly situated at the *prima facie* stage of the *McDonnell Douglas* test.[25]  Even applying the less rigorous standard—requiring only that the employees be "involved in or accused of the same or similar conduct and are disciplined in different ways"[26]—Defendant's motion should be granted.  Defendant has explained that the reason Plaintiff was terminated is that she made an error with a patient's medication while on final step discipline.  Plaintiff's claim that the patient was not harmed and her explanation as to why she was late are irrelevant.  Significantly, Plaintiff has not come forward with evidence that this explanation is pretextual and that the real reason for dismissal was race discrimination.

Plaintiff also argues that statistical data supports her race discrimination claim.  An individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation.[27]  Plaintiff argues that for each year of reporting[28] Defendant's white employees are under-represented and black employees are over-represented in the number of terminations.  The supplied statistics are not useful, however, because the only evidence of the racial make up of Defendant's employees is as of February 25, 2011.  Plaintiff failed to establish the percentage of black/white employees during the years in question, so the percentage of those fired is meaningless, without this proper background information.

Even assuming that Plaintiff met her initial burden of proving a *prima facie* case, Plaintiff's race discrimination claim cannot survive summary judgment.  "The ultimate question

---

[25]*Wimbley v. Cashion*, 588 F.3d 959, 962 (8th Cir. 2009).

[26]*Id.*

[27]*Lyoch v. Anheuser-Busch Companies, Inc.*, 164 F.R.D. 62, 66 (E.D. Mo. 1995) (quoting *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990)).

[28]2005–2011.  *See* Doc. No. 33-1, Exhibit E.

in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."[29]  Here, Plaintiff has failed to come forward with evidence that Defendant's legitimate, nondiscriminatory reasons for her termination were pretextual or that the real reason was discrimination on account of her race.

## CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED this 26th day of May, 2011.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[29]*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 153 (2000).